UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BRIAN A. CLARKE *et al.*,

                            Plaintiffs,                        **23 Civ. 2158 (GS)**

              -against-                                    **ORDER**

CITY OF NEW YORK,

                            Defendant.
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

       The Court has reviewed Plaintiffs' March 28, 2024 letter (and accompanying materials) filed on behalf of all parties seeking approval of the parties' proposed Settlement Agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Dkt. No. 38 (the "Letter" or "Ltr.")). The Court commends the parties for achieving a resolution of this matter, particularly at such an early stage in the litigation. The Court's review of the *Cheeks* application, however, gives rise to several concerns and requests for additional information, as detailed below, that require denial of the application at this time. The parties are directed to resubmit their application with the required information by May 13, 2024.

Plaintiffs' Claimed Damages

       The Court cannot ascertain from the Letter or its supporting declarations what Plaintiffs' total claimed damages are in this case. In one place, the Letter sets forth Plaintiffs' belief that "the Gross Damages Amount is equal to approximately 71% of Plaintiffs' total claimed damages using a full three-year recovery period and a full award of liquidated damages." (Ltr. at 6). On the next page, the Letter sets

forth Plaintiffs' belief that "the Net Settlement Fund . . . is equal to 71% of Plaintiffs' total claimed damages using a full three-year recovery period and a full award of liquidated damages." (*Id*. at 7).  Obviously, both those statements cannot be true, as the Gross Damages Amount (as defined in the Letter) is $1,609,870.47 and the Net Settlement Fund (as defined in the Letter) is $1,137,413.65.  (*See id*. at 5, 7).

Compounding the confusion, dividing the amount of the Net Settlement Fund ($1,137,413.65) by the amount of the Gross Damages Amount ($1,609,870.47) yields 0.7065.  In other words, the Net Settlement Fund represents (with rounding) 71% of the Gross Damages Amount.  But the Gross Damages Amount, which is the amount of backpay and liquidated damages that Defendant is paying to *settle* this case (*see id*. at 5), is not, as the Court understands it, equivalent to 100% of Plaintiffs' *claimed damages*.  Thus, it appears to the Court that *neither* representation in the Letter about a 71% recovery is true, because by definition, Plaintiffs' claimed damages must exceed the Gross Damages Award.

In assessing whether a proposed FLSA settlement is fair and reasonable, courts in this Circuit consider, *inter alia*, "the plaintiff's range of recovery." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  As the Letter's discussion of this factor demonstrates, courts typically calculate what percentage the net settlement amount going to the plaintiff (*i.e.*, exclusive of attorneys' fees and costs) represents of the plaintiff's total alleged damages.  (Ltr. at 7-8).  Here, however, Plaintiffs have failed to provide a critical component of that

calculation—the denominator—and their representation that the percentage recovery is 71% appears to be inaccurate. I cannot approve the proposed Settlement until I receive the necessary, accurate information concerning this issue. *See Tolentino v. Thai Smile Restaurant Corp.*, No. 20 Civ. 8812 (AT), 2023 WL 5051919, at *2 (S.D.N.Y. July 5, 2023) (denying *Cheeks* application without prejudice to renewal where court "cannot determine Plaintiff's range of possible recovery because Plaintiff provides no supporting declarations or exhibits stating the maximum recovery for his claims" and court thus was unable to "evaluate whether the proposed settlement amount is reasonable").

Chart With Claim-By-Claim Breakdown

The Letter contains a chart purportedly breaking down "the valuation of the Gross Damages Amount" for each category of Plaintiffs' claims (Overtime Pay Rate Claim, Straight Time Claim, Late Payment of Overtime Claim, Pre- and Post-Shift Overtime Claim, and Meal Period Claim). (Ltr. at 6). But the various dollar amounts set forth in the chart do not add up to the Gross Damages Amount, or the Net Settlement Fund, or any other number that bears a discernable relationship to any of the settlement amounts as described in the Letter or the Settlement Agreement.

Specifically, although the "Back Pay" amounts in the chart total $818,541.61, which corresponds precisely to the "Backpay Amount" in the Settlement Agreement (*see* Dkt. No. 38-1 at 3), the amounts in the "Liquidated Damages" column of the

chart total $501,667.03. This is significantly greater than the total "Net LDS"[1] amount of $318,872.04 that Plaintiffs are supposed to receive according to Exhibit A attached to the Settlement Agreement. (Dkt. No. 38-1 at 9). It is also significantly less than the amount of $791,328.86 that, when coupled with the $818,541.61 Backpay Amount, would equal the Gross Damages Amount of $1,609,870.47.

In addition, the Letter represents that Plaintiffs, with respect to their Meal Period Claim, will be receiving 90% of the backpay amount as liquidated damages. (Ltr. at 7). Although the chart also reflects this 90% figure, the amount of Meal Period Claim liquidated damages set forth in the chart ($235,039)[2] is only 40%, not 90%, of the Meal Period Claim backpay ($583,034.25).

In the renewed application, Plaintiffs are directed to provide a revised chart that (a) contains accurate information; (b) contains columns for "Back Pay" and "Liquidated Damages" that add up, respectively, to the $818,541.61 in total backpay to be received by Plaintiffs under the Settlement and the $318,874.04 in total liquidated damages to be received by Plaintiffs under the Settlement; and (c) also adds columns for Plaintiffs' claimed damages on each of their claims (both for backpay and liquidated damages) so that the Court can ascertain the percentage recovery in each area.

---

[1] The Court understands "LDS" to be shorthand for "Liquidated Damages."

[2] The Court notes that precisely the same number of $235,039 appears as the amount of liquidated damages for the Meal Period Claim in the comparable chart that Plaintiffs' counsel prepared in *Casis v. City of N.Y.*, No. 22 Civ. 1926 (SN) (S.D.N.Y.), Dkt. 53 at 6 (Jan. 19, 2023). It thus appears that Plaintiffs' counsel inadvertently copied that number into the chart in this case.

4

Lump Sum Amount

According to the Letter, the "Lump Sum Amount" of $905,508.41, payable under the Settlement Agreement in addition to the "Backpay Amount" of $818,541.61, will be distributed as follows: (1) $788,828.86 in net liquidated damages; (2) $2,500 in Service Awards; (3) $14,179.55 in out-of-pocket expenses to Plaintiffs' counsel; and (4) a one-third contingency fee to Plaintiffs' counsel in the amount of $569,956.82. (Ltr. at 3). However, these four amounts add up to $1,375,465.23, not $905,508.41. Something, therefore, is amiss (which the Court suspects is the $788,828.86 in purported net liquidated damages which, unlike the other three amounts, does not correspond to any other information in the Letter).

At the same time, the Letter states that, as part of the Settlement, Defendant agreed to pay attorneys' fees for Plaintiffs' counsel in the amount of $100,000 as a statutory award. (Ltr. at 5, 12).[3] This amount is apparently also encompassed by the Lump Sum Amount. Based on the total amounts to be paid to Plaintiffs as reflected in Exhibit A to the Settlement Agreement, the Court understands that this $100,000 will in fact paid to Plaintiffs, rather than Plaintiffs' counsel. Pursuant to Exhibit A, Plaintiffs will be paid a total of $1,139,913.65. (Exh. 38-1 at 9). Deducting that amount and the $14,179.55 in costs from the total Settlement Amount of $1,724,050.02 leaves $569,956.82 in attorneys' fees for Plaintiffs' counsel, which, indeed, is the amount of counsel's one-third contingency fee according to the

---

[3] The Court notes that the Settlement Agreement itself does not specifically reflect this $100,000 amount. (*See* Dkt. No. 38-1).

5

Letter. If Plaintiffs' counsel is only receiving the $569,956.82 contingency fee, then presumably Plaintiffs themselves are receiving the $100,000 being paid by Defendant in "attorneys' fees."

However, the Court needs to know with certainty whether this understanding is correct. Accordingly, Plaintiffs' renewed application must explicitly confirm that, under the proposed Settlement: (a) Plaintiffs will receive the full amount of $1,139,913.65 reflected in Exhibit A, and no portion of that amount will be received by Plaintiffs' counsel; and (b) the total amount of attorneys' fees to be received by Plaintiffs' counsel is $569,956.82. If Plaintiffs cannot confirm these facts, they shall explain what amounts Plaintiffs and Plaintiffs' counsel are receiving instead.

<u>Lodestar Multiplier</u>

The Letter states that the lodestar, based on the hours of work performed by Plaintiffs' counsel in this case, is $163,904.50, yielding a lodestar multiple of 3.48. (Ltr. at 16). Courts in this District have concluded that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." *E.g.*, *Mercado v. Metropolitan Transp. Auth.*, No. 20 Civ. 6533 (AT), 2023 WL 3451348, at *4 (S.D.N.Y. May 15, 2023); *Hernandez v. Village Natural Restaurant Corp.*, No. 19 Civ. 8378 (ER), 2020 WL 5518314, at *2 (S.D.N.Y. Sept. 14, 2020); *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17 Civ. 3302 (AJN), 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014).

The Court also notes that in six of the seven FLSA settlements reached by Plaintiffs' counsel with the City of New York over the past three years as cited in the Letter, including another case involving UPRs, AUPRs, and APSWs, the lodestar multiplier ranged between 0.71 and 2.66.  (*See* Ltr. at 3 n.3; *Casis*, Dkt No. 53 (multiplier of 1.23); *De La Cruz v. City of N.Y.*, No. 14 Civ. 9220 (PGG) (RWL) (S.D.N.Y.), Dkt. No. 226 (May 19, 2022) (multiplier of 2.66); *Foster v. City of N.Y.*, No. 14 Civ. 4142 (PGG) (RWL) (S.D.N.Y.), Dkt. No. 241 (Dec. 22, 2021) (multiplier of 5.51); *Matias v. City of N.Y.* No. 21 Civ. 1736 (SN) (S.D.N.Y.), Dkt. No. 36 (Oct. 22, 2021) (multiplier of 2.33); *Campbell v. City of N.Y.*, No. 16 Civ. 8719 (SDA) (S.D.N.Y.), Dkt. No. 183 (Aug. 23, 2021) (multiplier of 1.25); *Murray v. City of N.Y.*, No. 16 Civ. 8072 (PKC) (S.D.N.Y.), Dkt No. 226 (Apr. 8, 2021) (multiplier of 1.68); and *Lawtone-Bowles v. City of N.Y.*, No. 16 Civ. 4240 (AJN) (OTW) (S.D.N.Y.), Dkt. No. 155 (Feb. 9, 2021) (multiplier of 0.71)).

The Court recognizes that the Letter cites cases and sets forth arguments as to why a multiplier of 3.48 is justified in this case, all of which will be considered by the Court and may well justify the requested attorneys' fees.  However, if Plaintiffs' counsel wishes to cite any other cases or make any other arguments specifically addressing why a 3.48 multiplier is justified in light of the authority in this District holding that a multiplier near 2 should normally be sufficient, as well as the generally lower multipliers in other FLSA cases brought by Plaintiffs' counsel against the City of New York, they are invited to do so in their renewed application.

Notice of Settlement to Plaintiffs

Finally, the Letter indicates that each Plaintiff received from Plaintiffs' counsel a written communication informing them of the terms of the Settlement. (Ltr. at 4). In order to evaluate whether the Settlement is fair and reasonable, it is necessary for the Court to review the form of (or an example of) the communication that was sent to Plaintiffs. If Plaintiffs believe it is inappropriate to share this document with Defendant because of attorney-client privilege, they may submit it to the Court for *in camera* review.

Conclusion

For the reasons set forth above, the parties' application for *Cheeks* approval is DENIED without prejudice to renewal. The parties shall submit a revised application by May 13, 2024.

**SO ORDERED.**

DATED:   New York, New York
         April 22, 2024

_____
The Honorable Gary Stein
United States Magistrate Judge