UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BRIAN A. CLARKE *et al.*,

                            Plaintiffs,              **23 Civ. 2158 (GS)**

            -against-                  **ORDER APPROVING**
                                                                            **SETTLEMENT**
CITY OF NEW YORK,

                            Defendant.
------------------------------------------------------------------X
**GARY STEIN, United States Magistrate Judge:**

       This is an action brought under the Fair Labor Standards Act ("FLSA") on behalf of hundreds of current and former Urban Park Rangers ("UPRs"), Associate Urban Park Rangers ("AUPRs"), and Associate Park Service Workers ("APSWs") employed by the New York City Department of Parks and Recreation. The Complaint seeks backpay, liquidated damages, attorneys' fees and costs against Defendant City of New York ("City") based on alleged violations of FLSA. (Dkt. No. 1 ¶¶ 1-2). The parties entered into early settlement discussions in lieu of extensive merits discovery and, on March 5, 2024, notified the Court that they had reached a settlement in principle. (Dkt. Nos. 32, 38 at 2).

       On March 28, 2024, Plaintiffs' counsel submitted the parties' proposed Settlement Agreement along with a letter seeking approval of the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (Dkt. No. 38). In an Order dated April 22, 2024, the Court identified several concerns and questions it had regarding the information submitted and denied the application for *Cheeks* approval without prejudice to renewal. (Dkt. No. 43).

Plaintiffs' counsel submitted a revised application on April 30, 2024 (Dkt. No. 44) as well as an *ex parte* letter providing communications with Plaintiffs regarding the settlement at the Court's request. Having reviewed this supplemental submission together with the original application and the terms of the Settlement Agreement, I now find that the Settlement Agreement warrants approval under *Cheeks*.

First, the economic terms of the Settlement Agreement are fair and reasonable. (*See* Dkt. No. 44-1 ¶¶ 2.1-2.3). I reach this conclusion for the reasons set forth in counsel's letters (*see* Dkt. Nos. 38 at 4-10 & 44 at 2-4) and based on my own assessment of the totality of the circumstances and consideration of the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Settlement Agreement provides for Defendant to pay a total settlement amount of $1,724,050.02, of which $1,139,913.65 will go to the 349 Plaintiffs participating in the settlement and $584,136.37 will go towards attorneys' fees and costs. (Dkt. No. 44 at 1-2; Dkt. No. 44-1 ¶¶ 2.1 & 2.4). Each Plaintiff will receive an award of backpay as well as an amount in liquidated damages. (Dkt. No. 44-1 Exh. A).

In the aggregate, Plaintiffs claim $1,093,516 in backpay and $2,241,583.58 in total claimed damages including liquidated damages. (Dkt. No. 44 at 2). Under the settlement, Plaintiffs will receive, in the aggregate, $818,541.61 in backpay (roughly 75% of the amount claimed) and another $318,872.04 in liquidated damages (roughly 28% of the amount claimed). The aggregate recovery represents approximately 51% of Plaintiffs' total alleged damages including liquidated damages. This is in line with other settlements found to be fair and reasonable.

*See, e.g.*, *Douglas v. Allied Universal Security Servs.*, No. 17 Civ. 6093 (SJB), 2019 WL 10960255, at *4 (E.D.N.Y. Oct. 10, 2019) (net settlement amount around 50% of claims "is well within the percentage recovery that this Court and others have found to be sufficiently fair and reasonable"); *Villalva-Estrada v. SXB Restaurant Corp.*, No. 14 Civ. 10011 (AJN), 2016 WL 1275663, at *3 (S.D.N.Y. Mar. 30, 2016) (approving as fair and reasonable settlement under which plaintiff received 47% of his total claimed damages).

In calculating the individual recovery amounts, each Plaintiff was assigned one point for each week during a "relevant recovery period" determined by using (i) a start date of three years prior to the date when the Plaintiff's Consent to Sue form was filed or the date Plaintiff held a position of UPR, AUPR, or APSW (whichever is later) and (ii) an end date of February 29, 2024 or the date plaintiff stopped holding one of these positions (whichever is earlier). (Dkt. No. 44-1 ¶ 2.5). This methodology appears reasonable and has been approved by other courts considering settlements in similar FLSA cases against the City. (Dkt. No. 38 at 3 n.3 (collecting cases)).

The Settlement Agreement also provides for service awards in the amount of $1,250 for each of the two Plaintiffs who served on Plaintiffs' "[s]ettlement [t]eam." (Dkt. No. 44-1 ¶ 2.1; *see* Dkt. No. 38 at 9 (describing work performed by settlement team members)). The $2,500 in service awards represents 0.0001% of the total settlement amount (Dkt. No. 38 at 9) and is appropriate given the additional duties of the two recipients as settlement team members. *See, e.g.*, *Hyun v. Ippudo USA*

*Holdings*, No. 14 Civ. 8706 (AJN), 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (approving service awards of $6,000 for each recipient representing 5% of the settlement fund).

Second, I also find the non-economic terms of the Settlement Agreement to be fair and reasonable. Although the release of claims in the Settlement Agreement is non-mutual, its scope is narrowly tailored to encompass only wage-and-hour claims that were or could have been asserted in this action for the period when Plaintiffs worked as UPRs, AUPRs, and/or APSWs. (Dkt. No. 44-1 ¶ 3.1). Such limited non-mutual releases have been approved in similar cases. *See, e.g.*, *Murray v. City of N.Y.*, No. 16 Civ. 8072 (PKC) (BCM), 2021 WL 2073462, at *1 (S.D.N.Y. Apr. 23, 2021); *Flores Galloso v. 3821 Food Corp.*, No. 20 Civ. 1940 (RA), 2021 WL 860343, at *2 (S.D.N.Y. Mar. 8, 2021). Further, the Settlement Agreement contains no confidentiality or non-disparagement clause.

Third, the amounts payable to Plaintiffs' counsel for attorney's fees and costs are fair and reasonable. Plaintiffs' counsel will receive a contingency fee of $569,956.82, which represents one-third of the total settlement amount (minus costs). (Dkt. No. 38 at 3, 10). This fee is consistent with written fee agreements counsel entered into with each Plaintiff providing for payment of a one-third contingency fee. (Dkt. No. 38 at 12; Dkt. No. 38-3 Ex. B at 2).[1] Such fees are routinely approved in FLSA cases. *See, e.g., Vargas v. Pier 59 Studios L.P.*, No. 18

---

[1] The fee agreements also provided that if the lawsuit resulted in no recovery, Plaintiff would have no obligation to pay any attorneys' fees. (*Id.*).

Civ. 10357 (VSB), 2021 WL 6066088, at *2 (S.D.N.Y. Nov. 4, 2021) ("courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases"); *Gonzales v. 27 W.H. Bake, LLC*, No. 15 Civ. 4161 (PAC) (HBP), 2018 WL 1918623, at *4 (S.D.N.Y. Apr. 20, 2018) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.").[2]

As a check on the reasonableness of attorneys' fees, courts in FLSA cases often calculate the "lodestar" amount. *See, e.g.*, *Joseph v. Metropolitan Transp. Auth.*, No. 20 Civ. 5776 (AT), 2023 WL 4865720, at *2 (S.D.N.Y. July 31, 2023). Here, at the time of their initial application on March 28, 2024, Plaintiffs' counsel stated that the lodestar was $163,904.50, yielding a lodestar multiplier of 3.48. (Dkt. No. 38 at 16). In its April 22, 2024 Order, the Court noted, *inter alia*, that courts in this District have stated that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases" and invited Plaintiffs' counsel to provide any additional arguments justifying the multiplier in this case. (Dkt. No. 43 at 6-7 (citations omitted)).

In their supplemental submission, Plaintiffs' counsel represent that, based on additional work that was not taken into account in their March 28, 2024 letter, the lodestar has increased to $191,109.50, which represents a multiplier of 2.98. (Dkt. No. 44 at 7-8). Further, counsel represent that because this case involves the claims

---

[2] The $14,179.55 in out-of-pocket expenses incurred by Plaintiffs' counsel is also appropriately substantiated in the accompanying Declarations from lawyers from the two firms involved. (Dkt. Nos. 38-3 Ex. A at 33, 38-4 Ex. at 12).

5

of 349 individual Plaintiffs, counsel "will expend significant additional time administering the settlement after it is approved" and that this work could extend for several months or up to a year after the settlement is approved. (*Id.* at 7). This assertion is substantiated by the Settlement Agreement, which imposes certain additional responsibilities on Plaintiffs counsel after the settlement is approved, including distributing to each Plaintiff his or her respective share of the "Lump Sum Amount" (as defined in the Settlement Agreement); distributing backpay checks to inactive Plaintiffs; and distributing Form 1099s to Plaintiffs receiving liquidated damages. (Dkt. No. 44-1 ¶¶ 2.3, 2.7).

Considering all the circumstances, including the arguments made in counsel's original application (Dkt. No. 38 at 10-17) and its supplemental submission (Dkt. No. 44 at 5-8), the Court does not find the one-third contingency fee award in this case excessive or unreasonable. That is particularly true since the lodestar multiplier will likely decrease significantly given the amount of work Plaintiffs' counsel faces in administering the settlement on behalf of their 349 clients. Further, counsel was able to achieve a substantial recovery for their clients in this case at a relatively early stage in the litigation, and such settlements should not be disincentivized. *See, e.g., Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (approving 7.6 multiplier in FLSA case while cautioning against "penalizing plaintiffs' counsel for achieving an early settlement" and noting that multiplier was "also reasonable because it will diminish over time"); *Sewell v. Bovis Land Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012

WL 1320124, a *13 (S.D.N.Y. Apr. 16, 2012) (approving fee award in FLSA class action and noting that "[a] lodestar multiplier of three falls well within the range granted by our Courts and equals the one-third percentage being sought").

In addition, the Court notes that it has received no objections to the proposed settlement from any of the 349 Plaintiffs. Plaintiffs' counsel represents that Plaintiffs were fully informed of the terms of the settlement and that there have been no objections. (Dkt. No. 38 at 1). This further militates in favor of approval of the settlement.

Finally, the Settlement Agreement provides that it will be subject to this Court's continuing jurisdiction. (Dkt. No. 44-1 ¶ 13.1). The parties have submitted a proposed Agreed Order of Dismissal providing that the Court will retain jurisdiction. (Dkt. No. 38-2). This language constitutes a valid retention of jurisdiction, *see Cardoso v. Paramount Foods Inc.*, No. 15 Civ. 7674 (SDA), 2020 WL 8880943, at *2 (S.D.N.Y. Apr. 30, 2020), and the Court finds retaining jurisdiction to be appropriate here.

Accordingly, the Settlement Agreement is hereby **APPROVED**. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

DATED:   New York, New York
         June 5, 2024

_____
GARY STEIN
United States Magistrate Judge

7